UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| EDGAR PERRY,<br><br>　　　　　　Plaintiff,<br>　　v.<br>CASHCALL, INC., et al.,<br>　　　　　　Defendants. | No. C 13-02369 LB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR A JURY TRIAL**<br><br>[Re: ECF Nos. 25, 32, 37, 70, 81] |

## INTRODUCTION

Plaintiff Edgar Perry, who is proceeding *pro se*, has sued four Defendants: CashCall, Inc. ("CashCall"); First Bank of California ("First Bank"); the Portuguese Fraternal Society of America ("PFSA"); and the State of California. First Amended Complaint ("FAC"), ECF No. 18.[1] Defendants move to dismiss Mr. Perry's First Amended Complaint. *See* CashCall's Motion, ECF No. 25; First Bank's Motion, ECF No. 32; PFSA's Motion, ECF No. 37; State of California's Motion, ECF No. 70. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and **VACATES** the March 20, 2014 hearing. Upon consideration of the papers submitted and the applicable authority, the court **GRANTS** Defendants'

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 13-02369 LB
ORDER

motions, **DISMISSES WITH PREJUDICE** Mr. Perry's claims against the State of California, First Bank, and PFSA and his TILA claim against CashCall, and **DISMISSES WITHOUT PREJUDICE** his breach of contract claim against CashCall.

**STATEMENT**

On May 24, 2013, Mr. Perry filed his initial complaint against CashCall and the United States Consumer Financial Protection Agency. Complaint, ECF No. 1. On July 28, 2013, pursuant to Federal Rule of Civil Procedure 15(a)(1), he filed a First Amended Complaint as a matter of course. FAC, ECF No. 18. He still named Cashcall as a defendant, but he dropped the United States Consumer Financial Protection Agency as a defendant. *Id.* at 2.[2] He also added the PFSA, First Bank, and the State of California as defendants. *Id.* Because Mr. Perry's allegations against each Defendant are distinct both in time and substance, the court summarizes them in turn below in the "Analysis" section of this order.

Defendants now move to dismiss Mr. Perry's First Amended Complaint. CashCall's Motion, ECF No. 25; First Bank's Motion, ECF No. 32; PFSA's Motion, ECF No. 37; State of California's Motion, ECF No. 70. Mr. Perry filed oppositions to CashCall's and the State of California's motions, but not First Bank's or the PFSA's motions. Opposition to CashCall, ECF No. 28[3]; Opposition to State of California, ECF No. 74. He also filed, without permission, a sur-reply to the State of California's reply. Sur-Reply, ECF No. 82.

On March 10, 2014, Mr. Perry filed a "Motion to Solicit the Court for a Jury Trial and Summary Judgment, as a Matter of Law." Plaintiff's Motion, ECF No. 81.

---

[2] *See* CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL §§ 8:1386 (amendment under Rule 15 may be used to drop a party), 8:1551 (amended complaint that voluntarily drops a defendant named in the original complaint effectively dismisses that defendant from the action) (The Rutter Group 2013).

[3] Strictly speaking, the document Mr. Perry filed is titled "Plaintiff's Motion praying the court to rule as a matter of points of law and [Proposed] Order to same effect." See Opposition to CashCall, ECF No. 28. To the extent that the paper requested the court to "verify his evidence," *see id.* at 1, or enter judgment in his favor, the court previously denied the request as improper at that stage of the proceedings. *See* 10/30/2013 Order, ECF No. 54 at 4-5. To the extent that it can be construed as an opposition to CashCall's motion, the court does so.

All parties have consented to the undersigned's jurisdiction. Consent (Plaintiff), ECF No. 9; Consent (CashCall), ECF No. 13; Consent (PFSA), ECF No. 38; Consent (First Bank), ECF No. 57; Consent (State of California), ECF No. 75.

## ANALYSIS

### I. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. MR. PERRY'S ALLEGATIONS AND CLAIMS

### A. Mr. Perry's Allegations and Claims against the State of California

Mr. Perry's allegations against the State of California, in full, are as follows:

> Insofar as the State of California (please see evidence/exhibits nos. 6 throu 13): Different departments, the California's Attorney General (two), the Governor (Jerry Brown) abridged the plaintiff (US citizen)'s Constitutional and Bill of Rights time and time again and thus plaintiff prays the court compensation. The State of California disregards plaintiff's complaints about health hazard (sewer "lateral" bring connected from another's neighbor next door and expenses to unclog them), Pacific Gas and Electric refusal to care for hazards of power wires ("live") fall on plaintiff's property and ordering Dave Tree to trim his trees and one of his cars suffering big damage, et al.

FAC, ECF No. 18 at 7. Presumably, as he alleges that the State of California violated his constitutional rights, Mr. Perry brings a claim under 42 U.S.C. § 1983, which creates a federal civil cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another person of any of their "rights, privileges, or immunities secured by the Constitution and laws."[4] He seeks $300,000 in damages from the State of California. *Id.* at 8

The State of California makes two arguments, both of which are successful, in favor of dismissal. First, it points out that state sovereign immunity bars Mr. Perry's claims. This is because the Eleventh Amendment bars suits seeking damages against the State, including an "arm of the state" such as a state agent or agency. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991); *see also Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.") (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*,

---

[4] "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim for damages under § 1983, a complaint must allege that (1) "the conduct complained of was committed by a person acting under color of state law," and that "(2) "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Thus, "the first step in any [section 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271.

C 13-02369 LB
ORDER                                    4

531 U.S. 356, 363 (2001)).[5]

Second, it points out that it cannot be construed as a person for purposes of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). By its terms, Section 1983 applies to "persons" acting under color of law. In *Monroe v. Pape*, the Supreme Court held that Section 1983 was not applicable to government entities. 365 U.S. 167, 190-92 (1961). This holding was reiterated in *Will v. Michigan Dep't of State Police*, in which the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71. Here, Mr. Perry has sued the State of California, which clearly is protected from Mr. Perry's damages claims under these authorities.[6]

Accordingly, Mr. Perry's damages claims against the State of California are **DISMISSED WITH PREJUDICE**.

---

[5] The Eleventh Amendment also bars damages actions against state officials in their official capacity. *See Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment").

[6] "There is one exception to this general rule: When sued for prospective injunctive relief, a state official in his official capacity is considered a "person" for § 1983 purposes." *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)). "In what has become known as part of the *Ex parte Young* doctrine, *see Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity." *Id.* Mr. Perry refers to this doctrine (although not explicitly) in his opposition when he states that he is aware of federal cases in which Governor Brown has been sued in relation to overcrowding in California's prisons. *See* Opposition to State of California, ECF No. 74 at 1-2; *see also* Sur-Reply, ECF No. 82 at 1. Mr. Perry, however, sues for damages. He also cites, in his sur-reply, *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), but that case does not apply here. *See* Sur-Reply, ECF No. 82 at 1; *see also Hodge v. Oakland Unified School Dist.*, No. C 09–04719 RS, 2010 WL 4117539, at *2-3 & n.3 (N.D. Cal. Oct. 19, 2010) (dismissing a plaintiff's § 1983 claims against a state entity despite the plaintiff's citation of *Fitzpatrick*). It holds that Title VII's authorization of federal-court jurisdiction to award money damages against a state government to individuals subjected to employment discrimination does not violate the Eleventh Amendment because Congress was exercising its Section 5 remedial powers. *See Fitzpatrick*, 427 U.S. at 456. His other citations simply support federal jurisdiction over civil rights claims, generally. *See* Sur-Reply, ECF No. 82 at 2-3.

**B. Mr. Perry's Allegations and Claims against First Bank**

As for First Bank, Mr. Perry alleges that on December 1, 2004 First Bank issued a $150,000 equity line of credit to his wife Isaura Perry and him. FAC, ECF No. 18 at 5-6.[6] The collateral for this loan was Mr. Perry's property at 2540 Market Avenue in San Pablo, California. *Id.* at 6. He further alleges that the "then-manager" represented that the interest rate on the loan would be 2 points over the prime rate, but later a "new manager," "without warning" to Mr. Perry and his wife and without their "written consent," "raised said number of points for 3 (three) %." *Id.* He also alleges that he made a written request for reimbursement for excessive interest for the loan." *Id.* He also alleges that First Bank made "billing error rights, even after [he and his wife] requested a correction on 9/7/05 by letter to [First Bank's] CEO" and that he never received a Truth-in-Lending Statement. *Id.* He further alleges that the "first local branch manager" told him that the interest rate on the loan would be fixed, but "according to the Loan Request Summary and other documents" the interest rate was variable and increased several times beginning in 2005. *Id.* at 7. Finally, Mr. Perry alleges that he "wrote to the director of the currency [in] St. Louis, Missouri[] about First Bank's federal lending irregularities and bank[] fraud in his bank[] accounts (whereas [the] local branch's manager manipulated his accounts) and [First Bank] ended up defrauding his accounts in the total of $5,834.50," but "the US Controller of the Currency never gave satisfaction to" his complaint. *Id.* Through this action, Mr. Perry seeks only that amount from First Bank. *Id.* at 8.

First Bank argues that any claims that Mr. Perry might have against it are barred by the applicable statutes of limitation. First Bank's Motion, ECF No. 32 at 9-13. Mr. Perry appears to allege claims for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, and fraud. But as described below, the limitations periods for these claims have run, and Mr. Perry's allegations do support tolling them.

---

[6] First Bank requests that the court take judicial notice of three documents related to Mr. Perry and his wife's loan, *see* Request for Judicial Notice, ECF No. 33, but the court believes that Mr. Perry's allegations are sufficient on their own for the court to analyze the arguments here. Thus, because they are unnecessary for this order, the court declines to take judicial notice of the documents at this time.

C 13-02369 LB
ORDER                                    6

1    First, under TILA, if a lender fails to disclose required material information, a borrower has a
2 right to monetary damages within one year of consummation of the loan. 15 U.S.C. § 1640(e); *see*
3 *King v. California*, 784 F.2d 910, 915 (1986). Generally, inaccuracies in disclosures are evident
4 upon reviewing the disclosure documents themselves, and the statute of limitations begins to run the
5 day the documents are executed. *See Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th
6 Cir. 2003). For damages claims[7], "the doctrine of equitable tolling may, in the appropriate
7 circumstances, suspend the limitations period until the borrower discovers or had reasonable
8 opportunity to discover the fraud or nondisclosures that form the basis of the TILA [damages]
9 action." *King*, 784 F.2d at 915. Such tolling, however, is available only if "despite all due
10 diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."
11 *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on different grounds by*
12 *Socop–Gonzalez v. INS*, 272 F.3d 1176, 1194 (9th Cir. 2000).

13    Second, RESPA provides plaintiffs with a private right of action for three types of wrongful acts:
14 "(1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. §
15 2607(a), (b); (2) requiring a buyer to use a title insurer selected by a seller, 12 U.S.C. § 2608(b); and
16 (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond
17 to a qualified written request for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v.*
18 *Wells Fargo Bank, N.A.,* No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011)
19 (citing *Patague v. Wells Fargo Bank, N.A.,* No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D.
20 Cal. Nov. 8, 2010)). Claims brought under §§ 2607 and 2608 are subject to a one-year statute of
21 limitation, while claims brought under § 2605 are subject to a three-year statute. 12 U.S.C. § 2614.
22 Equitable tolling of the statutes of limitations, however, may be appropriate if, "despite all due
23 diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."
24 *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000); *Ancheta v. Golden Empire Mortg.,*

---

[7] A borrower also has a right to rescind within three years of consummation of the loan. 15 U.S.C. § 1635(f); *see King v. California*, 784 F.2d 910, 913 (9th Cir. 1986). The three-year limitations period for a TILA rescission claim is not subject to equitable tolling. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). In any case, this does not apply here as Mr. Perry seeks only damages from First Bank.

1  *Inc.*, No. 10–CV–05589–LHK, 2011 WL 826177, at *5 (N.D. Cal. Mar. 7, 2011) ("Although the
2  Ninth Circuit has not decided whether or not equitable tolling applies to RESPA claims, the court
3  applies the principles announced by the Ninth Circuit regarding equitable tolling of TILA claims.").

4  Third, under California Code of Civil Procedure § 338(d), there is a three-year statute of
5  limitation for fraud claims. Under the discovery rule, the statute of limitations does not begin to run
6  until the plaintiff discovers (or reasonably should discover) that he has been injured. *See Fox v.*
7  *Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *Nogart v. Upjohn Co.*, 21 Cal. 4th 383,
8  397 (1999). Similarly, the statute of limitations may be equitably tolled if the plaintiff—despite due
9  diligence—has not been able to discover the fraud or non-disclosures that form the basis for the
10  action. *See King*, 784 F.2d at 915.

11  Here, Mr. Perry and his wife entered into the loan with First Bank in 2004. Based on his
12  allegations, Mr. Perry was aware of the purported violations at least as of 2005, when his interest
13  rate began going up and he complained to various First Bank and other officials about the problems.[8]
14  Thus, the one-year statute of limitations period for his TILA claim ran in 2006, the one-year and
15  three-year statutes of limitations periods for his RESPA claims ran in 2006 and 2008, and the three-
16  year statute of limitations for his fraud claim ran in 2008. Accordingly, Mr. Perry's claims against
17  First Bank are **DISMISSED WITH PREJUDICE**.

18  **C. Mr. Perry's Allegations and Claims against the PFSA**

19  As for PFSA, Mr. Perry alleges that on August 30, 2007, he entered into a $150,000 mortgage
20  loan with "Uniao Portuguesa do Estado da California," which he says is a predecessor to PFSA.
21  FAC, ECF No. 18 at 5. He alleges that when he questioned the TILA disclosure statement's figures
22  (showing a finance charge of $178,111.20 and total payments of $328,111.20) and told PFSA's
23  representative that the annual percentage rate was "more like 8%, not the assigned 6.125%" in the
24  disclosure statement, the representative told him that the figures were produced by a formula and not
25  by Mr. Perry's own calculations. *Id.* In addition, another representative told him that PFSA would
26  not modify or refinance his loan. *Id.* Through this action, Mr. Perry seeks only $19,005, which is,

---

28  [8] And, as Mr. Perry filed no opposition to First Bank's motion, he provides no other statements or argument in support of tolling.

according to his calculations, "the difference in the interest rate of 6.125% charged by contract and the actual 7.3926% . . . , or 1.267% for six years." *Id.* at 8.

PFSA primarily argues that any claims that Mr. Perry might have against it are barred by the applicable statutes of limitation, and even if they are not time-barred, he cannot allege a claim on these facts. PFSA's Motion, ECF No. 37 at 8-12. As he did against First Bank, Mr. Perry appears to allege claims for violations of TILA, fraud, and breach of contract.

First, the court notes that Mr. Perry entered into the loan with PFSA in 2007. TILA disclosure statements are provided by lenders when loans are consummated, and Mr. Perry alleges no facts to suggest that he did not receive one at this time. Thus, he was aware of all facts necessary for his claims as of 2007.[9] This means that the one-year statute of limitations period for his TILA claim ran in 2008, and the three-year statute of limitations for his fraud claim ran in 2010.

As for his breach of contract claim, California has a four-year statute of limitations for such claims. Cal. Code Civ. Proc. § 337. California, however, also applies the discovery rule to breach of contract claims. *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). "The discovery rule may be applied to breaches which can be, and are, committed in secret, and moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *Id.* (citations omitted). "Ultimately, the discovery rule permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *Id.* (internal citations and quotation marks omitted). To invoke the discovery rule, a plaintiff must allege: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and (c) how and when he actually discovered the fraud or mistake. *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991). Here, Mr. Perry has clearly alleged that his breach of contract arises from his comparison of the interest rate PFSA allegedly promised him before entering into the loan with the interest rate that appeared on the TILA disclosure statement that he received after entering into the loan. This is not the type of situation that supports tolling under the discovery rule, which means that his breach of

---

[9] And, like with First Bank's motion, Mr. Perry filed no opposition to PFSA's motion, so he provides no other statements or argument in support of tolling.

contract claim ran in 2011.

Even if the statutes of limitations had not run, PFSA also points out that Mr. Perry's claims are based a misunderstanding of how the finance charge and the annual percentage rate are calculated. TILA requires lenders are required to disclose, among other things, the total finance charge and the annual percentage rate of interest, *see* 15 U.S.C. §§ 1605(a), 1606(a), and these are calculated differently. As one court explained in a case in which the plaintiffs made a claim similar to Mr. Perry's:

> [12 C.F.R. §] 226.18[, one of the regulations promulgated under TILA,] requires creditors to disclose "[t]he annual percentage rate, using that term, and a brief description such as 'the cost of your credit as a yearly rate.'" 12 C.F.R. § 226.18(e). APR, as defined by the statute, is not necessarily the same as an interest rate. As directed by 15 U.S.C. § 1606, APR is calculated in relation to the "finance charge." 15 U.S.C. § 1606. "Finance charge," meanwhile, is defined as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Examples of the types of charges that go into the determination of a credit charge include interest, service charges, loan fees, fees for a credit report, and fees for insurance. *Id.*; *see Smith v. Anderson*, 801 F.2d 661, 663 (4th Cir. 1986) ( "APR . . . differs from the general definition of interest rate because it considers, by definition, a broader range of finance charges when determining the total cost of credit as a yearly rate."). Essentially, both APR and the finance charge center on the same concept, the cost of credit. TILA requires that the cost of credit be expressed both as a dollar amount, the finance charge, and a yearly percentage rate, the APR. *See* 12 C.F.R. § 226.4(a) ( "The finance charge is the cost of consumer credit as a dollar amount."); 12 C.F.R. § 226.22(a) ("The annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made.").

*Velazquez v. GMAC Mortgage Corp.*, 605 F. Supp. 2d 1049, 1061-62 (C.D. Cal. 2008). Here, Mr. Perry alleges that PFSA breached a contract because the "actual" interest rate he calculated was 7.3926% but the disclosed annual percentage rate was 6.125%. As explained above, this is entirely consistent with TILA's requirements.

Accordingly, Mr. Perry's claims against PFSA are **DISMISSED WITH PREJUDICE**.

### D. Mr. Perry's Allegations and Claims against CashCall

Finally, as for CashCall, Mr. Perry alleges that, "[a]bout one year ago," a CashCall loan officer promised him a "refinance mortgage loan" with an interest rate of 2.75% and no closing costs. FAC, ECF No. 18 at 4. He further alleges that his credit was approved, CashCall had his property (which

was to be used as collateral) appraised, and "all necessary steps" for the loan were taken. *Id.* In the end, however, CashCall denied the loan "based on [the] lack of property owner's insurance on collateral property." *Id.* Mr. Perry also alleges that a second CashCall loan officer told him that he could close the loan by paying $4,000 in closing costs and providing a death certificate for the previous owner of the property to be used as collateral. *Id.* He alleges that he provided CashCall with a death certificate, but CashCall still refused to give him a loan. *Id.* Through this action, Mr. Perry seeks from CashCall only $2,780, which he says is "2% of [the] interest difference he ha[d] to pay [to] refinance" his mortgage with another lender. *Id.* at 8.

    CashCall argues that Mr. Perry's claim fails because he does not specify the legal claim that he brings against it. CashCall's Motion, ECF No. 25 at 5-6. It posits that Mr. Perry may bring a TILA claim (even though Mr. Perry does not allege disclosure deficiencies), and then correctly explains that such a claim would fail because Mr. Perry never consummated a loan with CashCall. *See Waters v. Weyerhaeuser Mortgage Co.*, 582 F.2d 503, 505 (9th Cir. 1978) ("There can be no violation of [TILA] until the transaction is consummated.") (citations omitted). Perhaps more on point, to the extent that Mr. Perry brings a breach of contract claim (which CashCall does not mention), the court finds that he has not sufficiently alleged the terms of the purported contract, how he fulfilled all of his promises, and how CashCall breached its promises. While he alleges that CashCall stated that a loan with certain features was available (i.e., a "refinance mortgage loan" with an interest rate of 2.75% and no closing costs), he does not allege all of the things he had to do to be approved for it or that he did all of those things. For instance, he alleges that he was denied a loan because the property to be used for collateral lacked insurance, but he does not allege that the property actually was insured[10] or that this requirement was not a term of the purported contract. In short, assuming that Mr. Perry brings a breach of contract claim against CashCall, the court finds that it is not sufficiently alleged. That said, the court cannot say at this time that he will not be able to allege it sufficiently. Accordingly, the court **DISMISSES WITHOUT PREJUDICE** Mr.

---

[10] Mr. Perry does, however, state in his opposition that the property was insured "[u]p to April 27, 2013," "for a full year." Opposition, ECF No. 28 at 2. This is not entirely helpful because, first, allegations must be contained in a complaint, and second, Mr. Perry never alleged the date on which CashCall denied his loan application.

Perry's breach of contract claim against CashCall. To the extent that Mr. Perry brings a TILA claim against CashCall, it is **DISMISSED WITH PREJUDICE**.

### E. Mr. Perry's Motion for a Jury Trial and Entry of Summary Judgment

In light of the court's rulings on Defendants' motions, Mr. Perry's motion for a jury trial and entry of summary judgment is **DENIED** as either moot or premature.

### CONCLUSION

Based on the foregoing, the court **GRANTS** Defendants' motions. Mr. Perry's claims against the State of California, First Bank, and PFSA are **DISMISSED WITH PREJUDICE**. As for his claims against CashCall, his TILA claim is **DISMISSED WITH PREJUDICE**, but his breach of contract claim is **DISMISSED WITHOUT PREJUDICE**. Mr. Perry may file a Second Amended Complaint against CashCall no later than April 7, 2014. Mr. Perry's motion for a jury trial and entry of summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 17, 2014

_____
LAUREL BEELER
United States Magistrate Judge